NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5421
    Facsimile: (213) 894-0142
    E-mail: Brent.Whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>          v.<br><br>$63,020.00 IN U.S. CURRENCY,<br><br>        Defendant. | No. 2:19-CV-00321<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6)<br><br>[DEA] |

Plaintiff United States of America brings this claim against defendant $63,020.00 in U.S. Currency, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an *in rem* civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $63,020.00 in U.S. Currency (the "defendant currency") and consists of $33,000.00 seized from Julanna Hanson and $30,020.00 seized from Keith Williams by law enforcement officers on or about August 6, 2018, at Los Angeles International Airport (also known as "LAX") located at One World Way, Los Angeles, California 90045.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Hanson and Williams may be adversely affected by these proceedings.

FACTS SUPPORTING FORFEITURE

8. On August 6, 2018, Drug Enforcement Administration ("DEA")/ LAX Group 3[1] officers received information that Williams and Hanson were traveling on American Airlines flight number 331 from New York, which is a known consumer city for narcotics to Los Angeles, which is a known source city where narcotics can be purchased. Officers learned that law enforcement officers in New York had discovered that Williams and Hanson were traveling together from New York, Hanson was

---

[1] DEA/LAX Group 3 is a task force comprised of DEA special agents, Los Angeles County Sheriff Department deputies and detectives, Los Angeles Police Department officers and Los Angeles Airport officers (collectively referred to herein as "officers").

carrying a large amount of currency and Hanson had claimed to the New York officers that she was carrying the funds because she was a car dealer.

9. When Williams and Hanson arrived in Los Angeles and exited their flight, officers spoke to them.

Officer Discussions With Williams

10. Officers approached Williams in the terminal and identified themselves. In response to inquiries from officers, Williams stated that he lived in New York, had traveled from New York to Los Angeles using a one-way ticket he had purchased and did not know when he would return to New York. Narcotic proceeds couriers often purchase one-way tickets shortly before their travel because they do not know when they will travel or when they will return after having delivered the narcotic proceeds. In addition, Williams stated that he had traveled with Hanson, whom Williams identified to officers as his (Williams') business partner.

11. While in the terminal, Williams also told officers that he was carrying $30,000.00 and planned to purchase a car that he intended to resell in New York. In addition, Williams stated that he intended to purchase a Honda Civic from a dealership in North Hollywood, California, but also told officers that he had no specific car in mind and had no solid plans to purchase a vehicle. Also, Williams stated that Hanson also had money in her possession, but that the funds Hanson was carrying belonged to her.

12. Williams accompanied officers to the DEA/LAX Group 3 office, where Williams and officers continued their discussions. While there, officers looked inside Williams' bags and found $30,020.00 of the defendant currency, including three large bundles

of currency situated in Williams' large blue bag and one smaller bundle of currency situated in Williams' small black bag. Williams stated that the three larger bundles of currency contained $10,000.00 in each bundle (i.e., a total of $30,000.00) while the smaller bundle contained $3,000.00. However, officers found a total of $30,020.00, and not $33,000.00, inside Williams' bags.

13. At this point, Williams proceeded to tell officers a different story regarding the purpose to which the funds he was carrying would be put. Williams now told officers that he had traveled to Los Angeles to meet with and give $10,000.00 of the funds Williams was carrying to someone named Keith Middleton, for purposes of something Williams called credit repair. According to Williams, Williams owed Middleton $50,000.00, had previously wired $20,000.00 to Middleton (and to prove this Williams showed officers a picture on Williams' cellular telephone reflecting a $20,000.00 wire transfer to KM Legal Power LLC) and intended to give $10,000.00 of the funds he was carrying to Middleton. After the $10,000.00 was paid, Williams stated he would still owe Middleton $20,000.00 (i.e., $50,000.00 less the $20,000.00 wire transfer and the $10,000.00 hand-delivered payment). In addition, Williams claimed that after the $50,000.00 debt was paid in full, Williams would have access to a one million dollar credit line.

14. However, if Williams had in fact previously wire transferred $20,000.00 to Middleton to pay down a debt, it would be unreasonable for Williams to attempt to personally transport cash from New York to Los Angeles for delivery to Middleton, in light of the risk of loss of those funds by theft or otherwise while being transported. As he had done in the past, Williams could have wired

4

rather than carried those funds, in order to transmit them more safely and quickly to Middleton. Accordingly, Williams' statement that he intended to hand-deliver those funds to Middleton is indicative of narcotic trafficking activity.

15. As to the balance of the funds Williams had been carrying, Williams stated that he intended to use those funds to purchase a vehicle, and again mentioned a Honda Civic, which he (Williams) could resell for profit. Notwithstanding this story, Williams stated that he had been in the business of selling cars for approximately 17 to 18 years, yet nevertheless had to admit to officers that he (Williams) had never previously purchased a vehicle in California.

16. Williams also told officers that he had made approximately $60,000.00 to $70,000.00 in 2017. Despite claiming to have allegedly made this income in 2017, Williams also told officers that he had not filed any tax returns in 2017. In addition, Williams told officers that the funds he was carrying did not come from a bank account and that he liked to keep his money in cash. Also, Williams told officers that the balance in one of Williams' two bank accounts was $400,000.00, but when Williams called the bank on speakerphone in officers' presence, the bank stated that the account's current balance was $4,000.00 (and not $400,000.00) and had been approximately $150,000.00 the preceding day. When officers asked Williams what happened to the money withdrawn from the account, Williams stated that he had written checks to his investors but did not elaborate further.

17. In addition to the other narcotic trafficking indicators above, the $30,020.00 found on Williams was in denominations consistent with narcotic trafficking and consisted of 1,461 twenty

dollar bills, 12 fifty dollar bills, and 2 one hundred dollar bills.

<u>Officer Discussions With Hanson</u>

18. Officers approached Hanson in the terminal and identified themselves. In response to inquiries from officers, Hanson told officers, like Williams had advised officers, that she had traveled with Williams on a one-way ticket purchased for her by Williams the preceding day. In addition, Hanson stated that she was traveling to California to attend a vehicle auction in Anaheim, yet Hanson could not identify for officers a point of contact at the auction or any particular vehicle she intended to purchase.

19. Also, Hanson stated that she had no reservations for lodging or transportation in Los Angeles, and the lack of lodging and transportation in the city to which a courier is traveling is common for persons engaged in narcotic trafficking activity. Hanson also told officers she had approximately $30,000.00 (but officers found $33,000.00 in her possession), which funds Hanson stated was all hers and she was not carrying for Williams or anyone else. In addition, Hanson showed officers several bundles of currency that were inside a black plastic bag in Hanson's purse.

20. Hanson accompanied officers to the DEA/LAX Group 3 office, where Hanson and officers continued their discussions. Officers removed the currency from Hanson's purse and observed that the majority of the funds inside the black bag were wrapped and rubber-banded while the remaining funds outside the black bag were loose inside the purse. This is consistent with drug trafficking, in that bundling and rubber-banding currency is a drug trafficking indicator while the separation of rubber-banded, bundled currency from other money reflects that the separated non-bundled currency is often the

payment for a drug trafficking courier's services while the rubber-banded, bundled cash/narcotic proceeds is to be given by the narcotics courier to a third party by the courier.

21. During her conversation with officers in the DEA/LAX Group 3 office, Hanson also told officers the following. Hanson claimed to be the owner or co-owner of two car dealership businesses, with one of those businesses named Bonnies and located in New York while the other was named Assetz, co-owned with her brother Tremayne Hansen, and the business Hanson claimed to be representing on her current Los Angeles trip for the purpose of attending a daily automobile auction at Manheim in Anaheim, California. However, Hanson was unable to provide officers with any business cards, dealer licenses or websites pertaining to either of the two aforementioned businesses Hanson identified.

22. Hanson also told officers that she wanted to come to California to purchase cars because cars were cheaper in California. In addition, Hanson stated that if she found a car in California to purchase, she intended to have a transport service, at a cost of anywhere between $800.00 and $2,000.00, deliver the vehicle to New York.

23. In addition, Hanson changed her story as to whom the funds belonged. While she stated at the terminal that all the funds belonged to her, Hanson now told officers a different story. Now, Hanson stated that only approximately $15,000.00 of the funds were hers while the remainder of the funds she was transporting had been given to her from Assetz customers as cash deposits to purchase cars or parts. However, Hanson was unable to provide officers with any receipts reflecting these alleged customer deposits, and provided

vague answers when officers questioned Hanson further regarding the alleged customer deposits.

24.  Hanson told officers that she had bundled the currency that she was carrying, including sorting the currency and placing rubber bands around the bundles.  In addition, Hanson stated that the funds Williams was carrying belonged to him and she (Hanson) had nothing to do with those funds.  However, officers compared the funds they found on Hanson to the currency seized from Williams, and noted they were packaged in exactly the same way, despite the fact that Hanson told officers she was not involved in any manner with the funds Williams had transported to Los Angeles.

25.  In addition to the other narcotic trafficking indicators above, the $33,000.00 found on Williams was in denominations consistent with narcotic trafficking and consisted of 1,645 twenty dollar bills, 9 ten dollar bills, and 2 five dollar bills.

26.  In addition, a trained, state-certified narcotic detection canine alerted to the defendant currency, which signifies that the defendant currency had recently been in close proximity to narcotics at the time of the alert.  As of the alerts, the canine had received approximately 1,125 of hours of training in the detection of narcotics (including cocaine, methamphetamine, heroin, marijuana and opium) for which the canine is trained (including training which has occurred after the canine's initial certification in 2012), and the canine alerts to the scent of narcotics for which the canine is trained.  The canine's training has included routinely checking both circulated and uncirculated United States currency and the canine does not alert to uncirculated currency, in order to ensure that the canine does not alert to the actual odor of currency itself but

instead to the odor of controlled substances on the currency. Since the canine's initial certification, the canine has been responsible for the location and seizure of narcotics for which the canine is trained and sums of United States currency.

27. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

     (d)  for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: January 14, 2019        NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Division


                                                      /s/ *Brent A. Whittlesey*
BRENT A. WHITTLESEY
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Michael P. Woodard, hereby declare that:

1. I am a Task Force Officer with the Drug Enforcement Administration.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14, 2019 in Los Angeles, California.

_____
Michael P. Woodard

11